UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HONG WU,<br><br>        Plaintiff,<br><br>    v.<br><br>SHOPIFY (USA) INC., et al.,<br><br>        Defendants. | Case No. 25-cv-05960-RFL<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: Dkt. No. 13 |

      Hong Wu, a California resident, worked as an AI engineer at Shopify, a business incorporated in Delaware and headquartered in New York. For most of his time at the company, he alleges that he was one of the only employees of Asian descent on his team. After the company assigned Wu to report to Andrew McNamara, Wu alleges that his responsibilities progressively diminished, and the company ultimately discharged him. He then sued Shopify and two of his former coworkers, Matthew Colyer and Michael Tamir (both California residents), in Superior Court for a host of statutory, contractual, and tort claims. (*See* Dkt. No. 1-2 (the "Complaint").) Essentially, Wu claims that Shopify improperly terminated his employment because of his race. Shopify removed the action to this Court on the basis of diversity jurisdiction, and Wu now moves to remand, arguing that the Court lacks diversity jurisdiction. (*See* Dkt. No. 13 (the "Motion").) For the reasons set forth below, the Motion is **DENIED**. This Order assumes that the reader is familiar with the facts of the case, the applicable legal standards, and the parties' arguments.

      ***Diversity of Citizenship.*** Shopify does not dispute that Colyer and Tamir are California citizens for purposes of diversity jurisdiction. Instead, it argues that the Court should disregard their citizenship because they were fraudulently joined as defendants. *See Weeping Hollow Ave.*

1

*Tr. v. Spencer*, 831 F.3d 1110, 1112-13 (9th Cir. 2016).  "There are two ways to establish fraudulent joinder:  (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  *Grancare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citation and quotation marks omitted).  Shopify selects the second option, arguing that Wu could never establish his claims against Colyer and Tamir.  It bears "a particularly heavy burden" in succeeding on the argument, and "[t]he action must be remanded if there is *any possibility* that a state court would find that [Wu] stated a cause of action" against Colyer and Tamir.  *See Obeso v. Nat'l R.R. Passenger Corp.*, No. 23-cv-02793-SVK, 2023 WL 6278880, at *6 (N.D. Cal. Sept. 25, 2023) (emphasis modified) (citation omitted).  Shopify satisfies its burden.

      Wu brings two claims against Colyer and Tamir:  (1) harassment under California's Fair Employment and Housing Act; and (2) intentional infliction of emotional distress ("IIED").  Beginning with the harassment claim, Wu fails to identify any harassing conduct by Colyer or Tamir.  "[H]arassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. . . .  [C]ommonly necessary personnel management actions . . . do not come within the meaning of harassment."  *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 707 (2009) (citation omitted).  For example, "hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like," are not considered harassment.  *See Reno v. Baird*, 18 Cal. 4th 640, 646-47 (1998) (citation omitted).  Instead, such actions, when based on improper motives, constitute unlawful discrimination.  *See Roby*, 47 Cal. 4th at 705-06.

      Yet Wu alleges only a passive acceptance of personnel management actions in claiming that Colyer and Tamir harassed him:  both "w[ere] part of" meetings and discussions in which McNamara "targeted and diminished Wu's responsibilities," and neither acted to include Wu.  (*See* Complaint ¶ 15.g.)  Such alleged inaction in the face of McNamara's personnel decisions

does not constitute harassment, particularly when neither Colyer nor Tamir was in Wu's supervisory chain. (*See* Dkt. Nos. 1-11, 1-12.) Moreover, even if coworkers' alleged inaction could be a basis for a claim against them, the alleged inaction at issue involved personnel decisions that cannot, as a matter of law, constitute harassment. That distinguishes this case from *Martinez v. Michaels*, No. 15-cv-02104-MMM, 2015 WL 4337059, at *2, *6 (C.D. Cal. July 15, 2015), where a supervisor allegedly "affirmed" and "condoned" "derogatory comments" (*i.e.*, not personnel decisions) made to the plaintiff on a daily basis. Wu offers more allegations in his proposed amended complaint (*see* Dkt. No. 16-2), but these additional allegations do not describe conduct by Colyer or Tamir that falls outside the scope of personnel management decisions. Moreover, Colyer and Tamir submitted declarations in which they aver that they had limited contact with Wu and were not aware of any harassment experienced by Wu. (*See* Dkt. Nos. 1-11, 1-12); *see also Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (court may consider evidence in evaluating fraudulent joinder). Wu did not submit any evidence in rebuttal. At best, therefore, Wu describes inaction by Colyer and Tamir in the face of allegedly discriminatory conduct. He does not, however, describe harassment.

As for the IIED claim, Wu must allege, among other things, that Colyer and Tamir engaged in "extreme and outrageous conduct." *See Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citations omitted). For "[c]onduct to be outrageous [it] must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993) (citation omitted). Wu does not allege that Colyer and Tamir engaged in any such conduct, as he describes only implicit participation in personnel decisions. *See Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (2d Dist. Div. 2 1996) ("Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged.").

Wu's contention that Colyer and Tamir allegedly "had no legitimate" or "justifiable"

reason to diminish his responsibilities, and thus that their conduct was outside the bounds of "necessary" personnel decisions, does not alter the result in this case. (*See* Dkt. No. 16 at 8, 10.)[1] Unlawful workplace discrimination is, by definition, unsupported by legitimate business reasons and is often experienced as harassing or highly distressing. *See Briley v. City of W. Covina*, 66 Cal. App. 5th 119, 142 (2d Dist. Div. 4 2021) ("A discriminatory . . . termination is undoubtedly upsetting and warrants reasonable compensation for any accompanying emotional distress." (citations omitted)); *Frank v. Cnty. of Los Angeles*, 149 Cal. App. 4th 805, 822 (2d Dist. Div. 4 2007) (employment discrimination requires "employment decision[s] . . . premised upon an illegitimate criterion"). Accepting Wu's argument would erase the distinction mandated under California law between harassment and extreme and outrageous conduct on the one hand, and unlawful discrimination on the other. The Court declines to adopt such an approach.

Thus, Wu fails to state his harassment and IIED claims against Colyer and Tamir, and in light of the case law discussed above, there is no possibility that a state court would hold otherwise. Accordingly, Colyer and Tamir were fraudulently joined as defendants, and the Court will disregard their citizenship in evaluating the propriety of removal.

***Amount in Controversy.*** In the Complaint, Wu demands payment "exceed[ing] $35,000.00," but he does not otherwise quantify the amount in controversy. (*See* Complaint at 33.) "Where, as here, it is unclear from the face of the complaint whether the amount in controversy exceeds $75,000, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018) (citation and quotation marks omitted). The evidence submitted demonstrates that Wu's lost wages exceed the $75,000 threshold. (*See also* Complaint ¶ 17 (economic damages include lost wages).)

Wu submitted a declaration with the Motion in which he explains that: (1) he received a $395,000 salary at Shopify; and (2) Shopify discharged him on April 4, 2025, and he began

---

[1] All citations to page numbers in filings on the docket refer to ECF page numbers.

working a new job "in or around late June of 2025." (*See* Dkt. No. 13-5 ¶¶ 3-4.) This information allows the Court to estimate the wages that Wu lost while he was unemployed using the following three-step process.

First, excluding Saturdays and Sundays, there are 261 workdays in 2025. Dividing Wu's $395,000 salary by this figure results in a lost salary per workday rate of approximately $1,513.40.

Second, assuming "late June" begins on June 16 at the absolute earliest, there are 50 workdays between April 5, 2025 (Wu's first day of unemployment), and June 15, 2025 (his estimated last day of unemployment).

Third, multiplying the $1,513.40 rate by 50 approximates lost wages to be $75,670. Accordingly, a preponderance of the evidence supports the conclusion that the amount in controversy exceeds the $75,000 threshold. Moreover, Wu may recover attorneys' fees in connection with his harassment claim against Shopify under Cal. Gov't Code § 12965(c)(6), which pushes the amount in controversy even further above the threshold. *See Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." (citations omitted)).

***Conclusion.*** After disregarding the citizenship of Colyer and Tamir, a California plaintiff and a New York and Delaware defendant remain. Over $75,000 is in controversy between these parties. Accordingly, the Court exercises diversity jurisdiction over this action, so the Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 7, 2025

RITA F. LIN
United States District Judge