UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HONG WU,<br><br>             Plaintiff,<br><br>       v.<br><br>SHOPIFY (USA) INC.,<br><br>             Defendant. | Case No.  25-cv-05960-RFL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 25 |

      The following recitation of facts is based on the allegations contained in the Complaint. (*See* Dkt. No. 1-2.)  Hong Wu worked as an AI engineer at Shopify for about a year.  For most of his time at the company, he was one of only two employees of Asian descent on his team.  After the company assigned Wu to report to Andrew McNamara, his responsibilities progressively diminished, and the company ultimately discharged him.  He subsequently commenced this action to recover, as he believes that Shopify discriminated against and harassed him because of his race and his son's special needs and retaliated against him for raising concerns about the company's potential legal violations.  Shopify now moves to dismiss.  (*See* Dkt. No. 25 (the "Motion").)  For the reasons set forth below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.[1]

      ***Legal Standard.***  A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  Failure to satisfy this requirement may result in dismissal.  *See id.* 12(b)(6).  To survive a Rule 12(b)(6) challenge, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim

> has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] All citations to page numbers in filings on the docket refer to ECF page numbers.

>misconduct alleged.  [This] standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citations omitted).

In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice." *See UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation omitted). A court must also presume the truth of a plaintiff's allegations and draw all reasonable inferences in their favor. *See Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022).  However, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).

***Claim One:  Race and Disability Discrimination.***  To state a claim for race discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), Wu must allege that his race "was a substantial motivating factor, rather than simply a motivating factor," in Shopify's decision to terminate his employment.  *See Suarez v. Bank of Am. Corp.*, No. 18-cv-01202-MEJ, 2018 WL 2431473, at *17 (N.D. Cal. May 30, 2018) (citing *Harris v. City of Santa Monica*, 56 Cal. 4th 203 (2013)).  Similarly, to state a disability discrimination claim based on his son's condition, Wu must allege that his "association with" his son was a substantial motivating factor in the termination decision.  *See Castro-Ramirez v. Dependable Highway Express, Inc.*, 2 Cal. App. 5th 1028, 1036-37 (2016).  As currently pled, the allegations of Wu's complaint do not satisfy that standard for either the race discrimination or disability discrimination claim.

A plaintiff may plead causation by alleging that "similarly situated employees were treated more favorably, or that other circumstances surrounding the adverse employment action give rise to an inference of discrimination."  *See Colombo v. Palo Alto Unified Sch. Dist.*, No. 24-cv-00909-NC, 2024 WL 6840045, at *8 (N.D. Cal. Dec. 13, 2024) (citations omitted).  With respect to his claim of race discrimination, Wu does not offer non-conclusory allegations about

similarly situated employees of different races who were treated differently (*e.g.*, who these employees were, how they were in similar positions, how they were treated differently). The closest allegation is that McNamara allegedly instructed Wu on multiple occasions to communicate less frequently with his colleagues, "a directive that he never saw McNamara giving to any of his similarly situated Caucasian colleagues, who did not have accents like he did." (*See* Complaint ¶¶ 15(m), (o).) Communicating with others at Shopify was integral to Wu's effectiveness at his job, so this directive does qualify as an adverse employment action. (*See id.* ¶ 15(c)); *Thomas v. Dep't of Corrs.*, 77 Cal. App. 4th 507, 511 (2000) (adverse employment action includes "significantly diminished material responsibilities"). But as before, Wu does not allege any facts about the Caucasian employees to support a plausible inference that they were similarly situated, so he insufficiently alleges a causal connection between his race and that adverse employment action. Wu does allege that the only other Asian member of his team experienced "the same type of treatment" as he did, but again, he does not offer non-conclusory allegations about the type of treatment that this colleague experienced, how that compared to the treatment of non-Asian employees, or how those non-Asian employees were similarly situated. (*See* Complaint ¶ 15(h).)

Wu also does not allege any connection between being required to speak less with his colleagues and any other adverse employment action taken against him. For example, while Wu alleges that Shopify purported to terminate his employment because of his performance, he does not allege that the inability to speak more often with his colleagues affected his performance in a manner that led to his termination. *See, e.g.*, *Smith v. W.W. Grainger, Inc.*, No. 18-cv-01405-JGB, 2019 WL 1670942, at *3-4 (C.D. Cal. Feb. 5, 2019) (insufficient allegations of race as a substantial motivating factor for adverse employment action where no allegations that "similarly situated individuals outside [the plaintiff's] protected class were treated more favorably," and sole allegation suggesting "racial animus" bereft of causal connection to adverse employment action).

With respect to his claim of disability discrimination, again, Wu offers only conclusory

allegations of a connection between him taking time off to attend to his son's condition and Shopify's decision to terminate his employment. Wu nevertheless argues that the timing of the termination is sufficient to plausibly allege a causal connection, as Shopify terminated his employment just a few days after he returned from having taken two days off to care for his son. Without more, however, this bare temporal proximity is not enough, given that: (1) Wu had previously taken time off to care for his son without any resistance or adverse consequences; and (2) Wu's own allegations show a pattern of conflicts with McNamara that preceded his requests for time off (and thus do not appear to have been prompted by those requests). (*See* Complaint ¶¶ 15(n)-(o), (s)); *see, e.g.*, *Frausto v. Bank of Am., Nat'l Assoc.*, No. 19-cv-01583-DOC, 2019 WL 8012420, at *1-2, *5 (C.D. Cal. Dec. 4, 2019) (insufficient allegations of causation where "at least some of Plaintiff's requests for time off to care for her parents were granted," and the plaintiff was discharged two days after incident where she had to leave to take her mother to receive a medical procedure). In sum, Wu has not alleged facts sufficient to support a plausible inference that his son's condition was a substantial motivating factor in the termination decision.

***Claim Two:  Race and Disability Harassment.***  As explained in the prior order denying Wu's motion to remand:

> [H]arassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. . . . [C]ommonly necessary personnel management actions . . . do not come within the meaning of harassment.  For example, hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, are not considered harassment.  Instead, such actions, when based on improper motives, constitute unlawful discrimination.

(Dkt. No. 22 at 2 (citations and quotation marks omitted).)  Wu's Complaint does not describe any conduct fitting within the definition of harassment, as he alleges only personnel action.  In his opposition briefing, he characterizes Shopify as having "isolated, demeaned, and stripped [him] of [his] duties in a way that undermined his credibility and professional standing." (*See*

4

Dkt. No. 30 at 12.) But that characterization is unsupported by any specific factual allegations.

Wu also points to two decisions from the California Supreme Court as support for the proposition that personnel decisions "may constitute harassment when carried out in a manner conveying hostility or bias." (*See id.*) *Miller v. Department of Corrections* involved "widespread" "sexual favoritism" in the workplace, sufficient to convey "the demeaning message . . . to female employees that they are viewed by management as 'sexual playthings' or that the way required for women to get ahead in the workplace is to engage in sexual conduct with their supervisors or the management." *See* 36 Cal. 4th 446, 451 (2005). *Roby v. McKesson Corporation* involved "hostile social interactions in the workplace that affected the workplace environment because of the offensive message they conveyed to" the plaintiff, including "shunning [the plaintiff] during staff meetings, [] belittling [the plaintiff's] job, and [] reprimand[ing] [the plaintiff] in front of [his] coworkers." *See* 47 Cal. 4th 686, 708-09 (2009). As currently pled, the Complaint offers no similar allegations of personnel actions that conveyed demeaning or offensive messages in the workplace.

**Claims Three and Eleven: Retaliation.** Retaliation under FEHA, like discrimination, is governed by a "substantial motivating reason" causation standard. *See Alamo v. Prac. Mgmt. Info. Corp.*, 219 Cal. App. 4th 466, 469-70 (2013). Retaliation under Labor Code Section 1102.5 applies a "contributing factor" causation standard. *See Wilson v. Target Corp.*, No. 25-cv-00043-AMO, 2025 WL 3114455, at *2 (N.D. Cal. Nov. 6, 2025). As with Wu's discrimination claims, there are no allegations tying Wu's disclosure of privacy violations to his employment being terminated.

The first time he raised a concern was in October and November 2024, about four and five months before the March 2025 termination. "In order to support an inference of retaliatory motive based on timing alone, the adverse action must have occurred fairly soon after the employee's protected expression." *Anderson v. City & Cnty. of San Francisco*, 169 F. Supp. 3d 995, 1028 (N.D. Cal. 2016) (citation and quotation marks omitted). A four or five month gap, without other causation allegations, is too long to satisfy the substantial motivating factor

standard at the pleading stage. *See, e.g.*, *Noone v. Hitachi Rail STS USA, Inc.*, No. 24-cv-00313-FWS, 2024 WL 5415115, at *6 (C.D. Cal. Dec. 2, 2024). The second time Wu raised a concern was in February 2025. At that time, he raised the concern to his colleague Matthew Colyer. Wu does not allege that Colyer participated in the decision to terminate his employment or communicated Wu's concerns to someone who did. (*See* Complaint ¶ 15(r).) Though Wu alleges that McNamara told him to continue his work without addressing the risks and otherwise ignored this complaint (*see id.*), Wu does not allege facts to support a plausible inference that McNamara was aware of Wu's complaint. Without more, there is not a sufficient basis to plausibly infer a connection between Wu raising privacy concerns to Colyer and Shopify's subsequent decision to terminate Wu's employment.

Wu does, however, sufficiently allege that Shopify retaliated against him by diminishing his duties. After Wu raised his privacy concerns to McNamara in October and November 2024, McNamara allegedly "instructed Wu to no longer write design documents" and "to communicate less with other team members." (*See id.* ¶¶ 15(j), (l)-(m).) Writing "technical documents" and communicating with others at Shopify were integral to Wu's effectiveness at work. (*See id.* ¶ 15(c).) So, as discussed above, diminishing Wu's responsibilities in this way constitutes an adverse employment action. This adverse employment action does not extend to the termination, however, because Wu does not allege any facts connecting his diminished responsibilities to the allegedly pretextual performance justification for the termination.

**Claims Four and Five: Failure to Accommodate Disability and Engage in Interactive Process.** Wu has not stated a failure to accommodate claim because the only two alleged requests for accommodation (time off work) were both granted. Wu counters that Shopify's attempts to accommodate him were superficial, but he offers no allegations or explanation as to how those two requests were inadequately accommodated, and he does not identify other requests for accommodation that were denied. He also disputes that he was granted accommodations because Shopify terminated his employment a few days after he returned from his second requested period of time off, but that termination says nothing about whether the

accommodations were granted in the first place. Finally, he argues that terminating his employment nullified prior accommodation grants, but he does not explain how that is the case.

As for the interactive process claim, "[l]iability hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith." *See Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986, 1014 (2009) (citation omitted). Wu does not allege any breakdown in communication, and, by his own allegations, Shopify provided every accommodation that he requested, so it did not fail to participate in good faith. Accordingly, he has failed to state an interactive process claim.

***Claims Six and Ten: Failure to Prevent Discrimination, Harassment, and Retaliation, and Wrongful Termination in Violation of Public Policy.*** The parties agree that these claims are derivative of the discrimination, harassment, and retaliation claims. (*See* Motion at 20; Dkt. No. 30 at 16.) Because those claims fail, these claims also fail.

***Claims Seven and Eight: Breaches of Oral and Implied Contracts.*** Under California law, employment is presumed to be at will, but parties may contractually agree to a different arrangement. *See Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 335-36 (2000). Under an at will arrangement, Shopify could permissibly terminate Wu's employment without cause. *See Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 392 (2006) ("An at-will employment may be ended by either party at any time without cause, for any or no reason, and subject to no procedure except the statutory requirement of notice." (citation and quotation marks omitted)). Wu conclusorily alleges that he entered into an oral contract specifying that he could not be terminated without cause, but he does not allege who he spoke to when he entered into the oral contract, when they spoke, or what specifically they discussed. That is not enough to allege the existence of an oral contract, let alone one with terms defeating the presumption of at will employment. *See, e.g.*, *ScoreBlue, LLC v. Locum Tele PC*, No. 23-cv-00345-WLH, 2024 WL 5372398, at *8 (C.D. Cal. Dec. 9, 2024). The breach of implied contract claim fails for the same reason. Wu argues that the Court must evaluate "the totality of the circumstances and the parties' actual understanding,"

7

but again, he offers no allegations of what those circumstances are and no allegations evidencing the parties' understanding. (*See* Dkt. No. 30 at 16.)

**Claim Nine: Negligent Hiring, Supervision, and Retention.** "[A]n employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee. Liability is based upon the facts that the employer knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *McKenna v. Beesley*, 67 Cal. App. 5th 552, 566 (2021) (citation and footnote omitted). Wu does not plead any non-conclusory facts suggesting that Shopify knew or should have known that hiring any of its employees carried a risk that those employees would discriminate, harass, or retaliate against Wu. *See, e.g.*, *Lee v. Delta Air Lines Inc.*, No. 20-cv-08754-CBM, 2021 WL 5990162, at *9 (C.D. Cal. June 2, 2021). Wu argues that McNamara's conduct was open for management at Shopify to see, and so it knew that he presented a risk of discrimination, harassment, and retaliation. But again, Wu offers insufficient allegations of anyone at Shopify actually discriminating or harassing him. He does sufficiently allege that McNamara retaliated against him by diminishing some of his duties, but he does not allege any facts suggesting that this retaliation was open for management at the company to see. (*See also* Complaint ¶ 15(m) (McNamara allegedly retaliated against Wu in "a one-on-one meeting").) Accordingly, Wu has not stated his negligent hiring, supervision, and retention claim.

**Claim 12: Intentional Infliction of Emotional Distress.** As explained in the prior order denying Wu's motion to remand, to state an IIED claim, "Wu must allege, among other things, that [Shopify] engaged in extreme and outrageous conduct. For [c]onduct to be outrageous [it] must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*See* Dkt. No. 22 at 3 (citations and quotation marks omitted).) Wu describes only personnel decisions, and he does not allege other extreme and outrageous conduct sufficient to support an IIED claim. *See id.* (personnel decisions, without more, insufficient to support IIED claim). Wu's cited cases do not compel a different result. In *Padilla v. AT&T Corp.*, the court did not determine whether the plaintiff sufficiently alleged an IIED claim and instead merely held that

the defendants failed to satisfy their burden in raising a fraudulent joinder argument in opposition to a motion to remand. *See* 697 F. Supp. 2d 1156, 1159-60 (C.D. Cal. 2009). In *Corona v. Quad Graphics Printing Corp.*, the supervisors' conduct went beyond personnel decisions, as they allegedly "subjected [the plaintiff] to intimidation that jeopardized his job, health, and career." 218 F. Supp. 3d 1068, 1074-75 (C.D. Cal. 2016) (quotation marks omitted).[2]

Wu also fails to state an IIED claim because he offers only conclusory allegations of the severe or extreme emotional distress that he allegedly suffered. *See Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (IIED requires, among other things, "the plaintiff's suffering severe or extreme emotional distress").

*Conclusion.* For the foregoing reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**. The retaliation claims are sufficiently alleged to the extent based on diminishment of Wu's responsibilities. Otherwise, all of Wu's claims, including the remainder of the retaliation claims concerning termination, are **DISMISSED WITH LEAVE TO AMEND**. If Wu wishes to file an amended complaint correcting the deficiencies identified above, he shall do so by **January 5, 2026**. The amended complaint may not add new claims or parties, or otherwise change the allegations except to correct the identified deficiencies, absent leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: December 8, 2025

RITA F. LIN
United States District Judge

---

[2] The *Corona* court also characterized the supervisors' provision of "false reasons to terminate" the plaintiff as conduct sufficient to support an IIED claim. *See Corona*, 218 F. Supp. 3d at 1074-75. While the court didn't specify the specific false reasons provided, absent particularly egregious inflammatory falsehoods or other extreme conduct, offering pretextual justifications for an employment termination does not, without more, qualify as extreme and outrageous conduct. To hold otherwise "would erase the distinction mandated under California law between harassment and extreme and outrageous conduct on the one hand, and unlawful discrimination on the other." (*See* Dkt. No. 22 at 4.)